UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ELIZABETH ANN REYNOLDS,

    Plaintiff,

v.                                                    Case No.:  6:24-cv-978-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff Elizabeth Ann Reynolds seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on November 25, 2015, alleging disability beginning on April 1, 2014. (Tr. 152, 268-69). Plaintiff later amended the alleged onset date of disability to May 1, 2015. (Tr. 1214). The application was denied initially and on reconsideration. (Tr. 152, 169). Plaintiff requested a hearing, and on November 13, 2018 a hearing was held before Administrative Law Judge Jose Perez-Gonzalez. (Tr. 45-74). On March 6, 2019, ALJ Perez-Gonzalez entered a decision finding Plaintiff not under a disability at any time from April 1, 2014, the alleged onset date, through March 31, 2018, the date last insured. (Tr. 24-35). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on November 15, 2019. (Tr. 1-6). Plaintiff appealed this decision and the District Court reversed and remanded the action for further proceedings. (Tr. 1485-86).

On remand from the Appeals Council, ALJ Perez-Gonzalez held a second hearing on January 20, 2021. (Tr. 1402-50). On February 23, 2021, ALJ Perez-Gonzalez entered a decision finding Plaintiff not under a disability at any time from April 1, 2014, the alleged onset date, through March 31, 2018, the date last insured. (Tr. 1502-16). Plaintiff requested review of the decision, and on October 27, 2021, the Appeals Council remanded the action to an administrative law judge for further consideration. (Tr. 1527-33).

On remand from the Appeals Council, ALJ Valencia Jarvis ("ALJ") held a third hearing on March 10, 2022. (Tr. 1342-1400). On June 27, 2022, the ALJ entered a decision finding Plaintiff not under a disability at any time from April 1, 2014, the alleged onset date, through March 31, 2018, the date last insured. (Tr. 1559-97). Plaintiff requested review by the Appeals Council and on August 19, 2022, the Appeals Council remanded the action to an administrative law judge for further proceedings. (1611-17).

On April 6, 2023, the ALJ held a fourth hearing. (Tr. 1282-1340). On September 28, 2023, the ALJ entered a decision finding Plaintiff not under a disability from April 1, 2014, the alleged onset date, through March 31, 2023, the date last insured. (Tr. 1213-54).[1] Plaintiff submitted written exceptions to the Appeals Council, but on April 19, 2024, the Appeals Council found no reason to assume jurisdiction. (Tr. 1203-1206). Plaintiff filed a Complaint on May 24, 2024, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 1).

---

[1] While the ALJ noted that Plaintiff amended her disability onset date from April 1, 2014 to May 1, 2015, the ALJ used the original date in finding Plaintiff not under a disability. (Tr. 1214, 1254). The ALJ also determined that Plaintiff's date last insured was March 31, 2023, rather than the dates used in the previous decisions. (Tr. 1254).

### D.  Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2023. (Tr. 1216). At step one of the sequential evaluation, the ALJ found that Plaintiff had engaged in substantial gainful activity during the following periods: 2021, 3rd quarter 2022. (Tr. 1216). The ALJ also found that there has been a continuous 12-month period or periods, during which Plaintiff did not engage in substantial gainful activity. (Tr. 1216). The ALJ's findings addressed the period or periods that Plaintiff did not engage in substantial gainful activity. (Tr. 1216). At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "fibromyalgia; degenerative disc disease of the lumbar spine; chronic pain." (Tr. 1216). At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 1222).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except she can frequently climb ramps and stairs, balance, stoop, kneel,

    crouch, and crawl and can occasionally climb ladders and scaffolds.

(Tr. 1222).

  At step four, the ALJ determined that through the date last insured, Plaintiff was capable of performing her past relevant work as a phlebotomist as it is actually and generally performed in the national economy. (Tr. 1251-52). The ALJ also determined that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 1251).

  Alternatively, the ALJ proceeded to step five and found that considering Plaintiff's age (53 on the date last insured), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 1252). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

  (1) Sorter, DOT[2] 361.687-014, light, SVP 2

  (2) Apparel Stock Checker, DOT 299.667-014, light, SVP 2

  (3) Garment Bagger, 920.687-018, light, SVP 1

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

(Tr. 1253). The ALJ concluded that Plaintiff had not been under a disability from April 1, 2014, the alleged onset date, through March 31, 2023, the date last insured. (Tr. 1254).

## II. Analysis

Plaintiff challenges the ALJ's RFC assessment, arguing that the ALJ did not properly evaluate the medical opinions of Nichole Sabado, P.T., Syed Zaidi, M.D., Amanda Folkers, P.A., Gary Weiss, M.D., and Stephen Nassar, Psy.D. when assessing Plaintiff's RFC. (Doc. 18, p. 19-20). For disability cases filed before March 27, 2017 – such as this one – at step four, an ALJ must properly consider treating physicians, examining physicians, non-examining physicians, and other source opinions, and weigh these opinions and findings as an integral part of the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). Whenever a physician offers an opinion about the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662

F.2d at 735).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion:   (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

### A.     Stephen E. Nassar, Psy.D's Opinion

The Court begins with the ALJ's consideration of Stephen E. Nassar, Psy.D.'s opinion.[3] On March 11, 2015, Dr. Nassar conducted a Psychological Evaluation of Plaintiff. (Tr. 532-36). Plaintiff was referred to the Division of Vocational Rehabilitation for a learning disability evaluation, a general intellectual evaluation,

---

[3] In the decision, the ALJ refers to Dr. Nassar as "Dr. Nasser." (Tr. 1239, 1241-42, 1246).

and to assess her current psychological functioning. (Tr. 532). In the decision, the ALJ included a lengthy summary of Dr. Nassar's findings:

> The claimant was referred for a psychological evaluation by a Vocational Counselor with the Division of Vocational Rehabilitation, which was conducted by Dr. Stephen Nasser in March 2015. She reported a long history of attention/concentration problems but was not diagnosed with ADD until she was an adult. She stated that Adderall helped. She also had depression off and on throughout much of her life. Her current stressors included underemployment, financial problems, and problems with her ex-husband. She denied any other significant mental health problems with anxiety, mania, or psychosis. She finished high school with a standard diploma, completed training as a CNA, medical assistant, and phlebotomist. She was placed in some special education classes and was diagnosed with learning disabilities. She had gotten fired from several jobs due to her disabilities and making too many mistakes. She hoped that Vocational Rehabilitation could help her with possible training and job placement assistance. She wanted to go back to school to become an LPN or get updated experience in phlebotomy. The claimant was casually dressed, and her grooming was good. Her speech was appropriate, but she was verbose. Her mood and affect appeared depressed. She was tearful at times. Her thought processes were logical, sequential, and fairly well organized but she was tangential when answering questions at times and appeared scattered, distractible, and at times impulsive. Test questions had to be repeated often. Her insight and judgment appeared relatively intact. She appeared to try to do the best she could on all tasks. The claimant obtained a Verbal Comprehension Index score of 81, Perceptual Reasoning Index score of 92, Working Memory Index score of 80, Processing Speed Index score of 92, and a Full-Scale IQ score of 83 on the Wechsler Adult Intelligence Scale-4th Edition, which placed her in the Low Average range. She had strengths in measuring English word knowledge and visual motor coordination and nonverbal reasoning/visual perception and weaknesses measuring ability to understand meaningful relationships between things and/or ideas, ability to solve problems in a nonverbal manner, nonverbal concept formation, immediate recall, numerical reasoning, visual motor speed, and

> awareness of important scientific, cultural, and historical facts and figures. On the Wechsler Individual Achievement Test-Second Edition, she encountered most difficulties with reading comprehension and written expression, which was suggestive of learning disorders. She appeared to be experiencing depressive symptomatology with evidence of mixed personality features. Her symptoms were most consistent with diagnoses of ADHD, unspecified depressive disorder, and Cluster B personality features, along with specific learning disorder with moderate impairment in reading and mild impairment with written expression. Dr. Nasser recommended that she pursue updated training and experience in phlebotomy and stated she had the intellectual capacity to be successful in many different entry level type jobs and beyond. She should avoid any type of job with a lot of multitasking and might need special accommodations. She appeared to possess the minimum amount of emotional stability to undergo training and/or work at that time (Ex. 4F).

(Tr. 1239).

In weighing Dr. Nassar's opinion, the ALJ found:

> While Dr. Nasser did not provide a function by function assessment of the claimant's psychological functioning in his March 2015 psychological evaluation (Ex. 4F), the undersigned accords some weight to his recommendations that the claimant pursue updated training and experience in phlebotomy and his statement that she had the intellectual capacity to be successful in many different entry level jobs, which was based on the testing that he conducted which demonstrated a Full Scale IQ score indicative of Low Average Intellectual functioning and is further compatible with the claimant's pursuit of her phlebotomy certification and her work within that field.

(Tr. 1248). The ALJ stated that she afforded some weight to Dr. Nassar's recommendations that Plaintiff pursue job training and would be successful at many entry level jobs. (Tr. 1248). In fact, the ALJ relied on this portion of the opinion in

the decision to discount other opinions. The ALJ noted that while Plaintiff had low average range Full Scale IQ, reading disorder, and difficulties with reading comprehension, the ALJ supported her decision that Plaintiff was able to work by citing Dr. Nassar's opinion that Plaintiff "had the potential to succeed in a variety of jobs that took into account her learning disorders." (Tr. 1241). The ALJ also discounted an evaluation completed seven months after Dr. Nassar's opinion by vocational rehab that found employment for Plaintiff was infeasible based on her physical and mental issues. (Tr. 1242). The ALJ found this opinion to be inconsistent with Dr. Nassar's testing and assessment. (Tr. 1241).

While the ALJ afforded some weight to Dr. Nassar's opinion that Plaintiff could pursue training and be successful at many entry-level jobs, the ALJ was silent on Dr. Nassar's other findings. (Tr. 1246). The ALJ did not discuss Dr. Nassar's finding of possible impediments to employment and, as Plaintiff argues, included no limitations in the RFC for these nonexertional limitations. (*Compare* Tr. 1239, *with* Tr. 535; Doc. 18, p. 33). Dr. Nassar found that Plaintiff:

> 1. may have difficulty concentrating on work activities (due to mental health problems)
>
> 2. may have difficulty interviewing, completing applications, and reading instructions (due to learning disorder and mental health problems)
>
> 3. may require increased time and attention to learn certain work skills (due to learning disorder and mental health problems)

    4. may have difficulty relating appropriately with coworkers or supervisors (due to personality factors and mental health problems)

    5. may have limited stamina to perform work activities ( due to mental health and physical problems)

    6. may require individualized accommodation to perform work activities (due to some or all possible impediments noted above)

    7. may have difficulty with work skills, reading instructions, or doing work and is limited or unable to retain new information or new learning without assistance (due to learning disorder and mental health problems)

(Tr. 535). Even though Dr. Nassar found that Plaintiff had the intellectual capacity to be successful in many different entry-level type jobs, he also found she should avoid any type of job that involves a lot of multitasking and because of her learning disability and other problems, she may need some special accommodations in order to be successful. (Tr. 536).

    The Commissioner contends that the ALJ considered Plaintiff's mental limitations assessed by Dr. Nassar. (Doc. 23, p. 20-21). The Commissioner claims that the ALJ considered Plaintiff's learning difficulties, mentioned Plaintiff's Full Scale IQ score, and pointed out that Dr. Nassar found Plaintiff retained the intellectual capacity to be successful in many different entry level jobs. (Doc. 23, p. 21). While the ALJ considered these issues, the ALJ did not consider Dr. Nassar's findings that Plaintiff would be successful in many different entry level jobs but with limitations. (Tr. 536).

Although the ALJ embraced Dr. Nassar's finding that Plaintiff could perform entry-level jobs, the ALJ did not discuss any of the nonexertional limitations for these entry level jobs that Dr. Nasar found, such as special accommodations in order to be successful. (Tr. 536). The ALJ also failed to explain why she included none of the possible impediments to employment in the RFC assessment, such as difficulty concentrating, increased time and attention to learn certain work skills, or difficulty with work skills, such as reading instructions. (Tr. 535, 1222-23). Without such an explanation or reasoning, the Court cannot conduct a meaningful review and determine whether substantial evidence supports the ALJ's decision as to Dr. Nassar's opinion and the RFC assessment. *See Morrison v. Comm'r of Soc. Sec.*, 660 F. App'x 829, 834 (11th Cir. 2016) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review."). Substantial evidence does not support the ALJ's consideration of Dr. Nassar's opinion and the RFC assessment.

### B. Remaining Issues

Plaintiff also challenges whether the ALJ properly considered the opinions of Nichole Sabado, P.T., Syed Zaidi, M.D., Amanda Folkers, P.A., and Gary Weiss, M.D. Rather than deciding these issues, because this action is remanded on other grounds that may affect the remaining issues, on remand, the Commissioner is directed to reconsider these issues as well.

### III. Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the medical opinions of record. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on April 10, 2025.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties